THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

ALLEN McCRAY, K52575,                    )
                                         )
                                         )
        Petitioner,                      )
                                         )          Case No. 25-cv-4050-SLD
                                         )
JAMAR RANGE, et al.,                     )
                                         )
        Defendants.                      )

**DEFENDANTS' COMBINED MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT**

NOW COME the Defendants, Blaze Burford, Dylan Trone, and Ryan Oelberg, by and

through their attorney, Kwame Raoul, Attorney General of the State of Illinois, and pursuant to

Federal Rule of Civil Procedure 56(a) and CDIL-Local Rule 7.1(D) as for their Motion for

Summary Judgment and Memorandum of Law in Support, hereby state as follows:

**BACKGROUND**

Plaintiff, Allen McCary, is an individual in custody of the Illinois Department of

Corrections ("IDOC"). Plaintiff filed suit on February 27, 2025, alleging violations of his

constitutional rights pursuant to 42 U.S.C. § 1983. (Doc. 1). Specifically, alleging that Plaintiff

possessed a double-cuffing permit that was ignored by Defendants who used excessive force when

placing him in single cuffs and transferring him to another unit, resulting in swelling and nerve

damage. (Doc. 1). Following a merit review of his Complaint, the Court found that Plaintiff could

pursue one claim of excessive force under the Eighth Amendment against Defendants Burford,

Trone, and Oelberg. (Doc. 13).

Defendants filed their Answer and Affirmative Defenses on September 12, 2025. (Doc.

22). In their Answer, Defendants denied violating Plaintiff's constitutional rights. *Id.* Defendants

Case No. 25-4050                                                                              1

set forth various affirmative defenses, including among others that Defendants were entitled to Qualified Immunity. *Id*.

Defendants assert no genuine issue of material fact exists and move for summary judgment on Plaintiff's claim for the reasons set forth herein.

## UNDISPUTED MATERIAL FACTS[1]

1. Plaintiff, Allen McCray #K52575, is an inmate incarcerated in the IDOC. (Doc. 1).

2. Plaintiff's claims arise from his incarceration at Hill Correctional Center ("Hill") in March of 2023. (Doc. 1.; Deposition of Plaintiff, attached hereto as Exhibit A, p. 9-10).

3. During all times relevant to Plaintiff's Complaint, Defendant Blaze Burford was employed by IDOC at Hill as a Sergeant. (Declaration of Defendant Burford, attached hereto as Exhibit B).

4. During all times relevant to Plaintiff's Complaint, Defendant Dylan Trone was employed by IDOC at Hill as a correctional officer. (Declaration of Defendant Trone, attached hereto as Exhibit C).

5. During all times relevant to Plaintiff's Complaint, Defendant Ryan Oelberg was employed by IDOC at Hill as a Sergeant. (Declaration of Defendant Oelberg, attached hereto as Exhibit D).

6. On March 28, 2023, Plaintiff's cell was entered for a shakedown. (Ex. A, p. 15-16; Ex. B; Ex. C; Ex. D).

7. Plaintiff was aware the cell was going to be searched because the officers announced the shakedown before entering. (Ex. A, p. 24; Ex. B; Ex. C; Ex. D).

8. Plaintiff was ordered to leave the cell and cuff up to be patted down. As he was ordered,

---

[1] These facts are undisputed only for the purposes of this Motion for Summary Judgment.

Plaintiff began to reach for the left pocket of his pants. (Ex. B; Ex. C; Ex. D).

9.   After this, the officers attempted to place Plaintiff in handcuffs, which Plaintiff resisted. (Ex. A, p. 16; Ex. B; Ex. C; Ex. D).

10. Plaintiff alleges Defendants were trying to place him in single cuffs, while he was telling them that he had a double cuff permit. (Ex. A, p. 16).

11. Plaintiff alleges Defendants "didn't want to hear [that he had a double cuff permit]" and he told them that it hurt. *Id.*

12. Defendants do not recall Plaintiff claiming he had a double cuff permit. (Ex. B; Ex. C; Ex. D).

13. Before Plaintiff was cuffed, he threw "several pieces of folded paper out of his pocket and tossed them onto the floor, attempting to kick them under the next cell." (Ex. B; Ex. C; Ex. D).

14. Plaintiff then claims that once the cuffs were placed on him, Defendants Burford and Trone grabbed him and "started manhandling [him] and forcing [him] off the wing." (Ex. A, p. 16).

15. Next, Plaintiff alleges Defendants Burford and Trone used Plaintiff's face and head to push him through the three doors to get off the wing. *Id.*

16. Plaintiff was given several orders to exit the wing and walk. He continued to resist. The Officers led him off the wing. (Ex. B).

17. Plaintiff was taken to segregated housing. (Ex. A, p. 18).

18. Plaintiff alleges that the first layer of his skin was broken due to the single cuffs placed on his wrist. (Ex. A, p. 29).

19. After this incident, Plaintiff went on a hunger strike and refused medical care. (Ex. A, pp.

33; 50; Ex. E. Relevant Medical Records Bates No. 000443; 000595-000654[2]).

20. Plaintiff's Health Status Transfer Summary dated March 13, 2023, two weeks before the incident outlined in Plaintiff's Complaint, indicated there was no physical disabilities or limitations on the Plaintiff. (Ex. E, 000595).

21. Hill Correctional Center policy is that an inmate's cell can be randomly searched at anytime. (Ex. B; Ex. C; Ex. D).

22. Hill Correctional Center policy is that when a cell is to be searched the inmates are required to go to the front of the cell to be pat searched and wait outside the cell with an officer. (Ex. B; Ex. C; Ex. D).

23. Hill Correctional Center policy is that when an individual informs the officers or sergeants that he has a double cuff permit, the officers or sergeants allow the individual to retrieve the permit before cuffing. (Ex. B; Ex. C; Ex. D).

24. Plaintiff alleges he has had a rotator cuff injury to his right shoulder since 2014 that he had not been undergoing active treatment for. (Ex. A, p. 9-12).

25. Plaintiff alleges that after this incident he has "permanent nerve damage" and has "no feeling" in two of the fingers on his right hand. (Ex. A, p. 21).

26. Plaintiff was seen by two members of the medical staff after this incident and there was no diagnosis for his injuries; he was also seen by medical staff in the following weeks where he noted wrist numbness but there was no ambulatory issue, range of motion issue, or pain. (Ex. A, pp. 30-32; Ex. E).

27. Plaintiff alleges he was seen by an outside nerve specialist six months after this incident where he learned he had nerve damage in his right wrist. (Ex. A, pp. 39-40; 43-44).

---

[2] The Defendants are in possession of Plaintiff's full medical file and can provide the full file at the Court's request.

Case No. 25-4050    4

28. Plaintiff's medical records indicate that he complained of wrist numbness after this incident, however the records indicate he suffered no pain and no loss of range of motion or ambulatory function. (Ex. E).

29. Plaintiff's medical records indicate that after this incident he possessed a double-cuff permit. (Ex. E).

30. The handcuffs left no scars. (Ex. A, p. 44).

## ARGUMENT

### I.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. (56(c)). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986). Yet not every conceivable inference must be drawn, only reasonable inferences. *Id*. at 312-12.

In *Celotex Corp. v. Catrett*, the United States Supreme Court held that summary judgment is mandatory if there is no genuine issue as to any material fact for trial if, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff must come forward with evidence of a specific factual dispute, evidence that would reasonably permit the

finder of fact to find in plaintiff's favor on a material question; otherwise, the court must enter summary judgment against the plaintiff. *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994); *International Union of Operating Engineers v. Associated General Contractors*, 845 F.2d 704, 708 (7th Cir. 1988).

## II.    PLAINTIFF CANNOT SHOW THAT DEFENDANTS VIOLATED HIS EIGHTH AMENDMENT RIGHTS BY USING EXCESSIVE FORCE

To establish a claim of excessive force under the Eighth Amendment, a plaintiff must show that the force used was done maliciously and sadistically to cause harm, as opposed to a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). In making this determination the court should examine a variety of factors in conducting this inquiry, including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner. *DeWalt v. Carter*, 224 F.3d 607, 619–20 (7th Cir. 2000). With regard to the last of these factors, while significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimis* use of physical force. *Id.* at 620. Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights. *Id.* "Infliction of pain that is 'totally without penological justification' is per se malicious." *Fillmore*, 358 F.3d at 504 (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)). With respect to handcuffs applied too tightly, courts have found no viable Fourth Amendment excessive force claim where the plaintiff complained only twice following his arrest about the cuffs being too tight, his wrists were red for one and one-half days, and he received no medical care for his wrists. *Tibbs v. City of Chicago*, 469 F.3d 661, 663 (7th Cir.2006), *see also* Gregory v. Carson, 2025 U.S. App. LEXIS 20922, *5.

Case No. 25-4050                                                                                                                    6

Here, Defendants Blaze Burford, Dylan Trone, and Ryan Oelberg are entitled to summary judgment because the amount of force used to restrain the Plaintiff was proportionate to the amount of force necessary to maintain the safety and security of the situation. The Plaintiff's cell was randomly chosen for a shakedown. (Ex. B; Ex. C; Ex. D). The Plaintiff had been given several orders to come to the front of the cell to get pat searched, which is standard procedure for when a cell is to be searched. (Ex; B; Ex. C; Ex. D). As Defendant Oelberg was conducting a pat down of Plaintiff, the Plaintiff began to reach for the left pockets of his pants. (Ex. D). To diffuse the potential danger of the situation, Defendant Oelberg gave Plaintiff several orders to cuff up and removed his OC spray from its holster. (Ex. D). Plaintiff reached into his pocket and pulled several pieces of folded paper out of it then tossed them onto the floor, attempting to kick them under the cell next to him. (Ex. B; Ex. C; Ex. D). Plaintiff eventually submitted to being handcuffed. (Ex. D). Plaintiff was then given several orders to walk and leave the wing, which he refused to comply with. (Ex. B; Ex. C). Plaintiff was escorted off the wing while he continued to resist the sergeants' and officers' directives. (Ex. B; Ex. C; Ex. D). Based on the foregoing, the sergeants and officers used reasonable, necessary force to maintain control of the dangerous situation and ensure the safety of the individuals in custody and themselves.

As to the extent of the injury of Plaintiff, Plaintiff alleges the handcuffs were placed too tightly and that the handcuffs cut the first layer of his skin. (Ex. A, p. 16). However, Plaintiff was seen by two members of the medical staff at Hill Correctional Center directly after this incident, there was no diagnosis of injuries to his wrist. (Ex. E). Plaintiff's medical records also indicate that he complained of wrist numbness after this incident, however the records indicate he suffered no pain and no loss of range of motion or ambulatory function. (Ex. E). Plaintiff further alleges that about six months after this incident, he received treatment from an outside nerve specialist

where he learned he had nerve damage in his wrist. (Ex. A, p. 21; 39-40; 43-44). Additionally, the application of the handcuffs left no scars. (Ex. A, p. 44).

The Defendants were in charge of conducting a shakedown of Plaintiff's cell. When Plaintiff continuously made the deliberate choice to not comply with orders, the Defendants were entitled to uphold their duty to the other individuals in custody to ensure their safety and security. Plaintiff's choice to reach into his pocket for unknown materials placed the officers in a position to analyze the threat this posed on the safety of the other individuals in custody and themselves. Thus, the Defendants are entitled to summary judgment because the Defendants needed to use force to maintain the control and safety of the situation, the force applied was proportionate to the need, there was a direct threat reasonably perceived by the Defendants, the Defendants gave multiple verbal orders for Plaintiff's compliance, and the injury suffered by Plaintiff was not severe.

### III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 817, 818 (1982). To determine whether an official is entitled to qualified immunity, a two-part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id.* at 202. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Id.* at 205.

Under the first prong of the analysis, the facts alleged here do not give rise to a constitutional violation. In handcuffing cases similar to that here resulted in summary judgment for correctional staff. The law supports Defendants' actions at issue here.

Defendants are also entitled to qualified immunity under the second prong of the analysis. The mere allegation that Plaintiff's handcuffs were fastened too tightly is not sufficient to support an excessive force claim. *Braun,* 346 F.3d at 763. In *DeWalt*, an inmate alleged that a correctional officer shoved him into a door frame causing bruising on his back. *Id*. at 611. This claim was dismissed because the inmate's complaint did not establish that the use of force was motivated by something other than a good faith effort to maintain or restore discipline. *Id*. at 619. Further, the court noted that the shove was "a single and isolated act, unaccompanied by further uses of force" and the bruising the inmate allegedly suffered did not appear to be particularly serious. *Id*. at 620. The inmate's allegations fell short of what is required to state a claim of unconstitutional force under the Eighth Amendment. *Id*.

Much like in *DeWalt*, Plaintiff cannot show a violation of his Eighth Amendment rights. In this instance, Plaintiff refused multiple direct orders to cuff up for his cell to be searched and as a result was handcuffed and taken to segregation. (Ex. B; Ex. C; Ex. D). While Defendant Oelberg was ordering Plaintiff to cuff up, he was reaching into his pocket for unknown substances. (Ex. D). He later took the items he had pulled out from his pocket and threw them on the ground. (Ex. B; Ex. C; Ex. D). Plaintiff refused to comply from the announcement of the shakedown conducted until his placement in restrictive housing. (Ex. B; Ex. C; Ex. D). Plaintiff alleges that he had a double cuff permit and the handcuffs were placed too tight. (Ex. A). Even taking Plaintiff's allegations as true, there is no Eighth Amendment violation here. Plaintiff has not shown that he attempted to retrieve his permit nor that the officers did not allow him time to retrieve this permit.

He was aware the cell was going to be searched because the officers announced the shakedown before entering. (Ex. A; p. 24; Ex. B; Ex. C; Ex. D). Plaintiff's cell was in the process of being searched, and despite his orders to receive a pat down, Plaintiff placed his hands in his pocket to reach for an unknown material. The officers have a duty to ensure the safety of the other inmates, the inmate themselves, and the rest of the staff. Plaintiff cannot establish that the alleged use of force by Defendants were motivated by something other than a good faith effort to maintain or restore discipline.

Because there are no facts showing that Defendants violated Plaintiff's constitutional rights, Defendants are entitled to qualified immunity.

## CONCLUSION

In the light most favorable to Plaintiff, Plaintiff cannot meet his burden to show Defendants violated his rights under the Eighth Amendment as alleged herein.

WHEREFORE, for the above and foregoing reasons, Defendant respectfully requests this Honorable Court grant her Motion for Summary Judgment and any other relief the Court deems necessary.

Respectfully submitted,

BLAZE BURFORD, DYLAN TRONE, and
RYAN OELBERG,

McKenna Plotner, #6353544
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
Telephone: (773) 590-7875
Facsimile: (217) 782-8767
E-Mail: McKenna.Plotner@ilag.gov
& gls@ilag.gov

Defendants,

KWAME RAOUL, Attorney General,
State of Illinois,

Attorney for Defendants,

By: s/ McKenna Plotner
McKenna Plotner, #6353544
Assistant Attorney General

## THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

ALLEN MCCRAY, K52575,                )
                                     )
                                     )
        Petitioner,                  )
                                     )           Case No. 25-cv-4050-SLD
                                     )
JAMAR RANGE, et al.,                 )
                                     )
        Defendants.                  )

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, the foregoing document, *Defendants' Combined Motion for Summary Judgment and Memorandum in Support*, was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> None

and I hereby certify that on the same date, I caused a copy of the document to be mailed by United States Postal Service to the following non-registered participant:

> Allan McCray, #20250424145
> Cook County Jail
> P.O. Box 089002
> 2700 South California
> Chicago, IL 60608

                            By:     s/McKenna Plotner
                                    McKenna Plotner, #6353544
                                    Assistant Attorney General
                                    500 South Second Street
                                    Springfield, IL 62701
                                    Telephone: (773) 590-7875
                                    Facsimile: (217) 782-8767
                                    E-Mail: McKenna.Plotner@ilag.gov
                                    & gls@ilag.gov

Case No. 25-4050                                                              12